OPINION OF THE COURT
Michael L. Hanuszczak, J.
In this case of first impression, the court is asked to determine whether a family offense petition should be dismissed because the alleged violent acts occurred prior to the effective date of the family offense statute.
Background of the Proceeding
On July 23, 2008, the petitioner filed a verified petition seeking an order of protection against the respondent pursuant to article 8 of the Family Court Act. On July 23, 2008, the petitioner was granted an ex parte temporary order of protection by the Honorable Bryan R. Hedges, directing the respondent to refrain from assault, stalking, aggravated harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or any criminal offense against the petitioner.
On July 30, 2008 the petitioner and the respondent personally appeared before the Honorable Michael L. Hanuszczak, and the temporary order of protection was amended to add additional conditions: directing the respondent to stay away from the petitioner and the home of the petitioner; to refrain from communication or any other contact with the petitioner; and to refrain from any acts creating an unreasonable risk to the health, safety or welfare of the petitioner.
On September 29, 2008 the attorney for the respondent filed a motion to dismiss the petition, stating that the petitioner did not have standing to bring the petition as the alleged acts of misconduct contained in her petition took place prior to the date that the statute was amended to permit a party in an “intimate relationship” to seek an order of protection against the other party. The attorney also argued that the petition should be dismissed because the relationship between the petitioner and the respondent was not an “intimate relationship” since the petitioner described the respondent as her “ex- *374 boyfriend” in her petition. The attorney for the petitioner opposed the motion to dismiss.
Article 8 of the Family Court Act
Article 8 of the Family Court Act (family offense proceedings) was originally intended by the New York State Legislature to provide “practical help” in a civil proceeding to the victim rather than “punishing” the perpetrator of the domestic violence in a criminal proceeding. Relief under a family offense proceeding was based upon “assaults and disorderly conduct” which occurred between husbands and wives, parents and child, or members of the same family or household. Family Court was given exclusive jurisdiction of family offense proceedings and criminal courts were required to transfer such proceedings to the Family Court except in certain limited instances. (2d Rep of Joint Legis Comm on Ct Reorganization, reprinted in 1962 McKinney’s Session Laws of NY, at 3428-3447.)
Since that time, the Legislature has revised article 8 in order to further protect victims of domestic violence. For example, the victim may now choose between proceeding in either the Family Court, in a criminal court, or in both courts. In addition, the number of “enumerated offenses” (criminal conduct which serves as a basis for a family offense proceeding) in article 8 has been increased by the Legislature. The acts which are currently enumerated under the Family Court Act are disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, stalking in the first degree, stalking in the second degree, stalking in the third degree, stalking in the fourth degree, criminal mischief, menacing in the second degree, menacing in the third degree, reckless endangerment, assault in the second degree, assault in the third degree, and attempted assault. The Legislature’s stated intention in its amendments of article 8 was to “reaffirm our commitment to the victims of domestic violence and send a clear message to batterers that domestic violence will not be tolerated.” (Governor’s Mem approving L 1994, ch 222, 1994 NY Legis Ann, at 168.)
In 2008, the Legislature amended article 8 of the Family Court Act by expanding the definition of “members of the same family or household” to permit persons in an “intimate relationship” to seek an order of protection. The amended statute includes those persons who
“are not related by consanguinity or affinity and *375 who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors the court may consider in determining whether a relationship is an ‘intimate relationship’ include but are not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an ‘intimate relationship.’ ” (Family Ct Act § 812 [1] [e], as added by L 2008, ch 326, § 7.)
The amended statute “shall take effect immediately [July 21, 2008] and shall apply to orders of protection pending or entered on or after such effective date” (L 2008, ch 326, § 16).
Intimate Relationships under Article 8
The amended statute does not automatically exclude an intimate relationship in which the respondent is described as the petitioner’s “ex-boyfriend.” The question of whether a particular relationship meets the qualifications of the statute will be determined by the court after testimony and proofs at a hearing. Therefore, in the instant proceeding, the respondent’s motion to dismiss the family offense petition due to the characterization of the respondent as the petitioner’s “ex-boyfriend” is denied.
Retroactive Application of the Amended Statute
In the instant proceeding, the respondent also argued that the family offense petition must be dismissed because the respondent’s alleged bad acts took place prior to the effective date of the amended statute. A review of the instant petition shows that the petitioner alleged that on July 13, 2008 the respondent committed a number of violent acts against her. The court notes that the alleged conduct occurred prior to July 21, 2008, which was the date authorizing a person in an intimate relationship to seek protection in the Family Court.
The question of whether such a petition should be dismissed is a matter of statutory interpretation and requires comprehensive analysis.
It is black letter law that a statute is to be construed prospectively and not retrospectively unless the Legislature *376 states otherwise. “A retroactive statute may be defined as one which takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [a], Comment.)
“Technically, such a statute includes only an act of a civil nature, its criminal counterpart being known as an ex post facto law.” (Id.) Although New York State does not have a specific law prohibiting ex post facto laws, the United States Constitution expressly forbids the federal government and the state legislatures from enacting ex post facto laws. (US Const, art I, § 9 [3]; § 10 [1].) The classic definition of an ex post facto law is found in Calder v Bull (3 Dali [3 US] 386 [1798]):
“1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.” (Id. at 390.)
As the amended article 8 statute is a civil rather than a criminal law, its retroactive application does not appear to offend the prohibition against ex post facto laws on its face. Some may argue, however, that there is a linkage between this statute and an ex post facto law. For example, in the event that a petitioner’s application to the Family Court results in an order of protection being issued against the respondent and if the respondent violates that Family Court order of protection, the respondent will be arrested and charged with criminal contempt under the Penal Law. The arrest of the respondent may result in incarceration, and/or the respondent may be sentenced to a term of incarceration if convicted of criminal contempt. However, this court finds that the linkage between the issuance of a Family Court order of protection and the possible incarceration of the respondent for criminal contempt is tenuous at best since the acts of the respondent which would result in an arrest for criminal contempt of the order of protection are separate and distinct from the acts which provide the factual basis for its issuance.
*377 It is also important to note that the types of conduct, i.e., the so-called enumerated offenses, which may result in an order of protection in the Family Court have long been prohibited by the Penal Law. Therefore, in the instant family offense petition, the respondent’s alleged violent conduct could not have been considered “innocent when done,” as in an ex post facto law, since the conduct has long been considered as criminal in nature.
Having determined that there is no ex post facto connection to the amended Family Court Act, this court now turns to an analysis of whether the amended Family Court Act should be given retroactive effect. At the outset, the court would like to distinguish between a law being given retrospective operation and one which is prospective in effect but based upon events which occurred prior to the effective date of the statute. “A statute is not retroactive, however, when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [a], Comment.) For example, an example of a law which is retrospective in operation is a change in a tax law which affects some form of taxation for the prior tax year. In the instant proceeding, there is no suggestion that the court grant an order of protection which has an effective date prior to the amended date of the statute; rather what is in dispute is whether the order of protection may be based upon conduct which occurred prior to the enactment date of the amended statute.
The court now turns to an analysis of what was intended by the Legislature in its amendment of section 812. “The surest guide in determining the legislative intent, is in the language of the statute itself, but the situation which the statute is designed to correct must also be taken into consideration in determining the legislative intent as to the retroactive operation thereof.” (Statutes § 51 [d], Comment.)
Although it would appear that the intent of the Legislature as to the effective date of the amended section 812 was unambiguous (immediately [July 21, 2008]), the court notes that in the legislative history of article 8, the Legislature has, on occasion, provided a more precise definition of the effective date when it was intended for the law to be applied purely prospectively. In 1995, when the Legislature amended section 812 to add additional enumerated offenses, the law was to take effect: “on the first day of November next succeeding the date on which it *378 shall have become a law, provided, however, that it shall apply solely to family offenses committed on or after such date.” (L 1995, ch 440, § 3.)
In its recent amendment of section 812, the Legislature chose not to add language which would specifically make it applicable to conduct committed after July 21, 2008. The absence of such language in the amended statute on this matter must lead to further inquiry into legislative intent.
A review of the currently available memoranda and other documents filed in support of the amended statute indicates that section 812 was amended to cure an omission in the categories of individuals who could petition the Family Court for an order of protection. According to the legislative introducer memorandum,
“By including unrelated persons who are or who have been in an intimate relationship in the same household for purposes of family and criminal court jurisdiction, the bill extends to them the strengthened protections we have afforded to other domestic violence victims since the enactment of the 1994 Family Protection and Domestic Violence Intervention Act. . . Such a change in law is long overdue.” (Senate Introducer Mem in Support of 2008 NY Senate Bill S8665, codified as L 2008, ch 326.)
It has been previously stated in this decision that statutes are to be construed as prospective in their application. However, there are certain exceptions. A statute that is considered “curative” or “remedial” may be applied retroactively. (McKinney’s Cons Laws of NY, Book 1, Statutes § 54 [a].) “As a general rule, remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, since they are to be liberally construed to spread their beneficial results as widely as possible; and the retroactive application of such statutes is constitutional.” (Id.) A statute may be applied retroactively where it has been revised to extend the benefits of the statute to a class of individuals denied that benefit by the original statute. (Matter of Cady v County of Broome, 87 AD2d 964, 965 [1982].)
This court notes that in 2003 the Court of Appeals held that an amendment to child protective laws in New York based on changes in federal laws was remedial in nature and could be applied retroactively. (Matter of Marino S., 100 NY2d 361 [2003].) The legal question was whether a proceeding seeking to *379 terminate the rights of a parent in Family Court could be based on parental conduct which preceded the enactment date of the revised laws. In its decision, the Court stated that “the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal.” (Id. at 371, quoting Matter of OnBank & Trust Co., 90 NY2d 725, 730 [1997].)
This court finds that the Legislature intended its amendment of section 812 to remedy a deficiency in the existing statute. The overarching purpose of article 8 is to provide for the safety of the victim; this purpose is analogous to the child protective laws which were the subject of the Marino decision, which protect children from abuse and neglect. When the Legislature amended section 812 to expand the definition of “members of the same household or family” so as to permit persons in intimate relationships to apply for family offense protection in the Family Court, the intent of the Legislature was remedial. Therefore, such an amended statute may be applied retroactively to conduct which occurred prior to July 21, 2008. This court finds that the amendment to section 812 may be construed as operating prospectively based upon past events.
In its determination, this court is mindful that courts are to “consider the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 95.) It would not be consistent with the aims of the Legislature — or, indeed, of public policy — to deny the petitioner in the instant proceeding the right to apply for an order of protection in the Family Court.
Accordingly, the respondent’s motion to dismiss the instant family offense petition because the respondent’s alleged bad acts took place prior to the effective date of the amended statute is hereby denied.
Adjudged, that the respondent’s motion to dismiss the family offense petition is denied.