OPINION OF THE COURT
Lee H. Elkins, J.
Respondent is the tenant of the petitioner. They reside in the same house. Respondent, by counsel, moves to dismiss the petition asserting that the Family Court lacks subject matter jurisdiction under Family Court Act article 8.
*664 The Family Court’s jurisdiction over crimes and offenses is limited by the State Constitution to those committed “by[*] or against minors or between spouses or between parent and child or between members of the same family or household.” (NY Const, art VI, § 13 [b].) Under the State Constitution, the legislature is empowered to grant “to the family court ... jurisdiction over crimes and offenses” between the designated categories of litigants. (NY Const, art VI, § 7.) Family Court Act § 115 provides that the Family Court has concurrent jurisdiction with the criminal courts over family offenses as defined in article 8 of the Family Court Act. Section 812 of the Family Court Act sets forth 19 Penal Law sections over which the Family Court may exercise jurisdiction, provided the offense is committed by persons in the relationship required by the state constitutional provision delimiting the Family Court’s jurisdiction. In addition to jurisdiction over the designated offenses committed “between spouses ... or between parent and child,” the statute grants to the court jurisdiction in such offenses committed between “members of the same family or household.” (Family Ct Act § 812 [1].)
In section 812 (1), the legislature listed the relationships it deemed to constitute members of the same family or household over which the Family Court could exercise “family offense” jurisdiction. These categories were expanded periodically to include previously excluded relationships, such as persons formerly married, and persons with a child in common. (See e.g. People v Allen, 27 NY2d 108 [1970].) Until 2008 these relationships were defined categorically, to include:
(a) persons related by consanguinity or affinity;
(b) persons legally married to one another;
(c) persons formerly married to one another regardless of whether they live in the same household; and
(d) persons who have a child in common regardless of whether such persons have been married or have lived together at any time.
In 2008, the legislature again amended section 812 to extend the jurisdiction of the Family Court to “persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship.” (Family Ct Act § 812 [1] [e].) The legislature rejected a categorical definition of an “intimate rela *665 tionship,” choosing instead to provide guidelines to the court in assessing the nature or type of relationship over which the court might exercise subject matter jurisdiction in family offense proceedings. The legislature specified that to be in an intimate relationship, the parties need not have lived together at any time and their relationship need not be sexual in nature. The court is charged with considering “the nature or type of relationship . . . ; the frequency of interaction between the persons; and the duration of the relationship,” but is not limited to such considerations. (Family Ct Act § 812 [1] [e].) The legislature specifically excluded “a casual acquaintance” and “ordinary fraternization between two individuals in business or social contexts.” (Family Ct Act § 812 [1] [e].)
In implementing this new grant of subject matter jurisdiction, the court must be mindful of two principles: first, the Family Court is a court of limited jurisdiction (Matter of Seye v Lamar, 72 AD3d 975 [2d Dept 2010]); and second, the purpose of Family Court proceedings is to provide immediate redress from violence or from specified criminal acts committed by a member of the victim’s family or household without requiring an arrest or criminal prosecution. The statute attempts to provide persons in intimate relationships with alternatives to criminal prosecution through proceedings which are essentially civil in nature, while also providing meaningful protection from abuse. (Family Ct Act § 812 [2] [b]; see e.g. Matter of Eileen W. v Mario A., 169 Misc 2d 484 [Fam Ct, NY County 1996].) The legislature intended by amending the statute, to extend these benefits to nontraditional and unsolemized relationships, which are nonetheless “intimate.” Examples include dating couples, couples who do not share a child in common, and same-sex partners. (See Matter of Mark W. v Damion W., 25 Misc 3d 1148 [Fam Ct, Kings County 2009].)
Whether a particular relationship appropriately falls within the court’s jurisdiction may require a hearing to establish the nature, type and duration of the relationship, the frequency of contacts, and other relevant considerations. However, where the court has sufficient information before it, based upon matters which are uncontested, the court may decline jurisdiction without a hearing. (Matter of Seye v Lamar, 72 AD3d 975 [2010].) In this case, the issue of jurisdiction may be resolved on the pleadings, including the petition, the affirmation in support of the motion to dismiss and the affirmation in opposition.
Here, the parties concede that they are landlord and tenant. The petitioner owns a multilevel private home. The parties met *666 in 2008 when the petitioner placed an advertisement in a newspaper soliciting a tenant. Respondent’s lease provides that he may occupy the front rooms of a furnished parlor floor with use of a semiprivate bathroom. He shares a common hallway with the petitioner, his landlady. Petitioner uses the two back rooms on the parlor floor otherwise occupied by the respondent tenant and has exclusive use of the rooms on the first floor. Apparently, the respondent can access a kitchen area on the first floor, but is not entitled to do so under the lease. Petitioner’s sister and her family live on the upper floors. The parties’ relationship bears no indicia of intimacy. They do not share meals. They do not even share a common living area. The fact that they occupy a common dwelling and have access to common areas does not create intimacy. The parties are more like tenants in a multiple dwelling who live on a common floor, than persons who share a common household. In this case the frequency of their contact is a function of their close quarters and not of any personal connection. To the extent there is contact, it is in a business context. The petitioner chose to enter a business which permits the respondent access to a portion of her home for a fee. Their relationship began with and is entirely defined by the tenancy. There is no personal history between them. They have no relationship outside of the tenancy. The petitioner is free to terminate the tenancy if the respondent’s behavior is disorderly. (RPAPL 711 [1]; see e.g. 40 W. 67th St. v Pullman, 100 NY2d 147 [2003].)
To extend the jurisdiction of the Family Court to this relationship would violate the constitutional limits placed upon that jurisdiction and would undermine the purposes of the Family Court Act. The Family Court is a forum for the resolution of disputes between persons who are intimately connected through familial ties or by emotional bonds arising from domesticity or companionship, even though unsolemized by marriage or not otherwise recognized by law. The legislature, by amending the statute, did not intend to create a forum for quasi-criminal proceedings brought by casual acquaintances or persons in commercial relationships who are unable to get prompt redress from the police for their grievances.
Respondent’s motion is granted. The petition is dismissed with prejudice. All temporary orders are vacated.

* Crimes committed by minors are encompassed in Family Court Act article 3.